# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON NASH FERGUSON, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:18-cv-01585-EPG <br><br> **FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 9).

**A. ALJ's Weighing of Medical Opinions of Treating, Examining and Reviewing Physicians**

Plaintiff first argues "[t]he ALJ committed legal error in weighing medical opinions of treating, examining and reviewing physicians as to Plaintiff's postural, environmental and mental

health limitations resulting in an erroneous RFC." (ECF No. 16, at p. 1)

The Ninth Circuit has stated regarding the weight given to medical opinions:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).
>
> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer,* 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995).
>
> The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician. *Pitzer,* 908 F.2d at 506 n. 4; *Gallant,* 753 F.2d at 1456. In *Gallant,* we held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled. 753 F.2d at 1456. Similarly, in *Pitzer,* we concluded that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence. 908 F.2d at 506 n. 4.

*Lester v. Chater*, 81 F.3d 821, 830–831, as amended (Apr. 9, 1996) (9th Cir. 1995) (internal footnotes omitted). *See also Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 692

(9th Cir. 2009) ("Where a treating or examining physician's opinion is contradicted by another doctor, the "[Commissioner] must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956–57 (9th Cir. 2002) (internal quotation marks omitted). However, to reject the opinion of a treating physician "in favor of a conflicting opinion of an examining physician[,]" an ALJ still must "make[ ] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 (internal quotation marks omitted).").

### 1. Medical Opinions Regarding Postural Limitations

Plaintiff argues that the ALJ erred in failing to incorporate any postural limitations. The ALJ considered the following opinions on the issue of postural limitations:

- Dr. Weeks, reviewing physician: Plaintiff has postural limitations, limited to no more than occasional climbing of ramps/stairs, ladders, ropes, scaffolds, stooping, kneeling, crouching, crawling (A.R. 65)
- Dr. Berry, reviewing physician: Plaintiff has postural limitations, limited to no more than occasional climbing of ramps/stairs, ladders, ropes, scaffolds, stooping, kneeling, crouching, crawling (A.R. 85)
- Dr. Van Kirk, examining physician: Plaintiff is limited to only occasional postural activities, limited because of chronic pain in the right hip, as well as his lower back (A.R. 864)
- Dr. Koon, treating physician: No lifting, bending, twisting, kneeling, crouching (A.R. 321)

Given the consistency in the medical opinions, these postural limitations may only be rejected by clear and convincing reasons.

The ALJ ultimately rejected all postural limitations. The ALJ wrote, regarding Drs. Van Kirk, Weeks, and Berry, "the undersigned finds that the generally normal findings, including full motor strength and intact sensation, as well as the medical record and the claimant's reporting regarding generally well controlled symptoms with treatment, are more consistent with no significant postural or environmental limitations." (A.R. 22) Regarding Dr. Koon's opinion, the

ALJ stated that "[t]his opinion appears to be primarily based on the claimant's subjective reporting and is afforded little weight overall, as it is inconsistent with the above-discussed largely normal findings, including generally full motor strength and no neurological deficit." (A.R. 22).

The ALJ does not include any citations to the record in this portion of his reasoning. Elsewhere in the opinion, the ALJ summarizes various objective findings. The summary following the motor vehicle accident in April 2012 revealed "multiple acute injuries and require[ed] partial resections and splenectomy." The findings at this point were far from normal, as would be expected immediately following a severe motor vehicle accident. The ALJ then summarizes other objective evidence, which appear to show some abnormal and some normal findings, including:

> Meanwhile, CT and x-rays of the spine showed minimal degenerative disc change at C5-6 but otherwise normal findings, including normal vertebral bodies and alignment (Exs. 1F; 6, 15-16; 4F; 194). March 2009 MRI showed multilevel degenerative changes, most significant at C5-C6 with a moderate left foraminal stenosis, and small annular tear at C4-5 that may be posttraumatic in nature (Ex. 8F: 38, 40). The undersigned notes that February 2009 X-rays of the lumber spine showed diffuse spurring of the lumbar vertebrae but no acute abnormality (Ex. 8F: 39).
>
> The record at times mentions tenderness at C6-7 and throughout the cervical paraspinal muscles into the upper trapezius area with decreased cervical range of motion; spasms, reduced range of motion, and tenderness to palpation of the thoracic and lumber spine; and tenderness over the third and fourth right foot metatarsals. . . . Objective findings on clinical examination were generally within normal limits, however, including no cervical spine tenderness to palpation anteriorly or posteriorly, full strength in the bilateral lower extremities, no focal weakness, symmetrical muscle contour, sensation intact to light touch in the bilateral upper extremities, intact and symmetrical reflexes; and negative straight leg raising. He was able to sit comfortably in an exam chair, get up and out of the chair, walk around an exam room, and get on and off an exam table without difficulty. He was able to perform satisfactory tandem walking, get up on toes and heels, squat down about half way, and walk with a normal heel-toe gait pattern without a limp or assistive device. . . .

A.R. 21 (discussion of mental status evaluations omitted). Later in that paragraph, the ALJ

includes a string of citations, covering over 100 pages of records.

From the Court's review of these records, it cannot find that objective evidence clearly supports the ALJ's decision to disregard the postural limitations from the four doctors. Certainly, some tests showed normal findings, but others did not. *See, e.g.* A.R. 329 ("He is fairly tender at C6 and C7 spinous processes. Also tender throughout the cervical paraspinals into the upper trapezius area."); A.R. 862 ("When I asked him to squat down and take a few steps, he was able to squat about halfway down but could not continue because of back pain."); 881 ("7/10, and 9/10 on Numeric Pain Intensity Scale"). The Court did not locate any record clearly stating that there were normal tests regarding postural limitations in particular. Given that the four doctors who reviewed medical records, and examined Plaintiff himself in the case of two of those doctors, found postural limitations, the Court finds that the ALJ's reference to certain normal findings is not a clear and convincing reason to discount the four uncontradicted doctors' opinions on postural limitations.

Nor does the ALJ provide a citation for the statement "claimant's reporting regarding generally well controlled symptoms with treatment." At the hearing, the Plaintiff answered as follows:

Q: Okay. When you take the medications, do you still have pain?

A: Yes, Yeah.

Q: Okay. On a scale of one to ten, ten being the worst pain, what would you say your average level of pain is?

A: I live at about a seven when I'm on my meds. And – you know, I have worse days than that.

(A.R. 42).

Thus, in light of the four uncontradicted medical opinions that Plaintiff has postural limitations, the ALJ erred in giving those opinions no weight without clear and convincing reasons to do so.

**2. Dr. Koon's Other Physical Limitations**

Plaintiff next claims that the ALJ erred by rejecting the opinion of treating physician,

David Koon, M.D. as it relates to his opined limitations. (ECF No. 16, at p. 18).

The ALJ gave the following analysis of Dr. Koon's opinions:

> Dr. Koon, M.D., opined the claimant was limited to working four or six hours per shift; no lifting greater than 10 pounds; and no lifting, bending, twisting, kneeling, or crouching (Exs. 1F, 8F). This opinion appears to be primarily based on the claimant's subjective reporting and is afforded little weight overall, as it is inconsistent with the above-discussed largely normal findings, including generally full motor strength and no neurological deficit."

(A.R. 22). The ALJ does not cite to any part of the record beside Dr. Koon's opinions.

The Court looks to whether this opinion is contradicted by other doctors. Consulting Dr. Weeks opined that Plaintiff could stand and/or walk (with normal breaks) for a total of: About 6 hours in an 8-hour workday, and sit (with normal breaks) for a total of: About 6 hours in an 8 hour workday. (A.R. 65) Dr. Weeks found Plaintiff not disabled because "we have determined that you can adjust to other work." (A.R. 71) Consultative physician Dr. Berry found the same as Dr. Weeks. (A.R. 103, 108) Examining physician Dr. Van Kirk opined that Plaintiff "should be able to stand and/or walk cumulatively for six hours out of an eight-hour day," and has "no limitations" on standing. (A.R. 864). Thus, Dr. Koon's opinion is contradicted by two consultative physicians and one examining physician.

As discussed above, the medical record appears mixed and does not conclusively establish as a matter of objective evidence whether Plaintiff can work for four, six, or eight hours in a workday. It is true that Dr. Koon, as treating physician, spoke to Plaintiff extensively, but it is unclear to what extent Dr. Koon's difference of opinion was based on Plaintiff's subjective statements. However, given that three doctors contradicted Dr. Koon's opinion on this point, the Court finds that the ALJ's reasons for not crediting this portion of Dr. Koon's testimony (separate from the postural limitations) are legally sufficient.

### 3. Mental Limitations

Plaintiff next challenges the ALJ's treatment of Plaintiff's mental functional limitations. (ECF No. 16, at p. 19). Dr. Nikkel is an examining doctor of psychology. Of relevance to this issue, Dr. Nikkel made the following functional assessments regarding his mental function:

> He may encounter difficulty performing detailed and complex tasks as evidenced by difficulties with memory and concentration.
>
> . . .
>
> The claimant is not able to perform work activities on a consistent basis without special or additional instruction as evidenced by difficulties with short term memory and concentration.
>
> . . .
>
> The claimant is not able to deal with the usual stress encountered in a competitive work place due to his limited work history and his current level of emotional and cognitive impairment.

(A.R. 859). The ALJ stated as follows regarding Dr. Nikkel's proposed mental limitations:

> This opinion is based on and generally consistent with a thorough in-person examination of the claimant and afforded great weight to the extent that it is consistent with the above discussed largely normal findings on objective mental status evaluation documented throughout the medical record, with consideration of documented impaired memory and concentration that limits the claimant to simple repetitive tasks. The undersigned finds, however, that the above discussed generally intact daily activities, as well as his observed capacity to appear and respond appropriately at consultative examinations and at the hearing, are more consistent with the capacity to perform work activities on a consistent basis without special or additional instructions and to deal with the usual stress encountered in a competitive workplace if he is limited to simple repetitive tasks.

(A.R. 23).

State agency reviewing psychiatrists Dr. Funkenstein and Dr. Balson both found moderate limitations in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism

from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes, and the ability to respond appropriately to changes in the work setting. (A.R. 67-68; 105-106).

> The ALJ stated as follows regarding Dr. Funkenstein's proposed mental limitations:
> These opinions are afforded great weight to the extent they are consistent with moderate difficulties understanding, remembering, or applying information, and moderate difficulties concentrating, persisting, or maintaining pace, which are consistent with the above-discussed objective findings, such as impaired recent memory and limited concentration. The undersigned finds, however, that the claimant's relatively intact daily activities, including maintaining a good relationship with his significant other and some social activities, as well as his capacity to interact appropriate with various clinicians throughout the record and at the hearing, are more consistent with at most mild difficulties interacting with others and no significant functional limitations in this area.

(A.R. 23).

Given the consistency in opinions between Dr. Funkenstein and Dr. Nikkel, the Court looks to whether the ALJ provided clear and convincing reasons for failing to incorporate any mental limitations beyond the limitation to "simple repetitive tasks."

Some of the ALJ's reasons are clearly not supported by substantial evidence. The ALJ's reference to "claimant's relatively intact daily activities," is contradicted by the ALJ's own recitation of those activities earlier in his opinion, where he summarizes the claimant's activities of daily living as follows:

> The claimant reported that he gets up in the morning, drinks a protein shake that his son has made, goes to the living room and sits on a couch to watch television, sits on his balcony and looks at the trees and birds, and takes naps. He does not vacuum or sweep, does not do laundry, and does not do dishes. He is able to cook in a microwave, and he sometimes goes to the grocery store, where he rides an electric cart. The claimant does not use a computer, does not play video games, and does not go outside for walks.

(A.R. 20). In light of this summary of his activities of daily living, the ALJ's statement that claimant had "relatively intact daily activities" is not supported by substantial evidence.

Nor is the ALJ's reason based on Plaintiff "maintaining a good relationship with his significant other and some social activities." The record contained the following questioning on this topic:

8

> Q: And do you have difficulty in terms of getting along with people?
>
> A: Yeah, my personal relationships are – I was in a –just broke up a 14-year relationship because of – you know, a lot of mental issues get in the way of our communication and ability to get along.
>
> Q: What of with—about outsiders, any strangers, do you have difficulty getting along with anyone else?
>
> A: Yeah, I don't—I try to avoid unfamiliar places and people.
>
> Q: Why?
>
> A: Anxiety, kind of like a fear of the unknown, I guess. . . .

(A.R. 44-45). This record does not support the ALJ's conclusion, and the ALJ did not cite anything else in the record to support it.

The ALJ also does not cite anything in the record for his reliance on the "largely normal findings on objective mental status evaluation documented throughout the medical record." Dr. Nikkel's notes indicate mixed results, including "He did not know the exact date," "recent memory was impaired," "He did not know his street address," "He did not know the name of the governor of California," "The claimant's concentration was limited," and "The claimant's judgment and insight are impaired." (A.R. 858).

Finally, the ALJ's reliance on claimant's presentation to clinicians and the ALJ does not provide a clear and convincing reason to discredit the opinions of medical professionals, including those that also observed the Claimant. The ALJ's own observations in this limited setting are not a substitute for medical evaluations by trained psychologists.

Thus, the Court finds that the ALJ's rejection of the three psychiatric doctors' opinions regarding social limitations was not clear and convincing and was thus legal error.

In the alternative, the Commissioner argues that the ALJ's error was harmless because "limitations to simple work account for moderate limitations." The only published Ninth Circuit case cited by the Commissioner is *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008). In that case, the Ninth Circuit upheld an RFC that "the claimant retains the residual

functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public" despite certain opinion testimony indicating that Claimant was "moderately limited" in her ability to "to perform at a consistent pace without an unreasonable number and length of rest periods" and "mildly limited" in several other mental functioning areas. The Court explained:

> The ALJ translated Stubbs–Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to "simple tasks." This does not, as Stubbs–Danielson contends, constitute a rejection of Dr. McCollum's opinion. Dr. Eather's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found Stubbs–Danielson is "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." As two of our sister circuits have recognized, an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.

*Id.* at 1174.

As an initial matter, the RFC in *Stubbs-Danielson* included a limitation of "no interaction with the public," which is not present in this ALJ's RFC. Moreover, even under the *Stubbs-Danielson* analysis, the ALJ's RFC fails to account for specific concrete work restrictions given by the doctors, including "The claimant has a fair ability to accept instructions from supervisors and interact with co-workers and the public," "The claimant is not able to perform work activities on a consistent basis without special or additional instruction," and "The claimant is not able to deal with the usual stress encountered in a competitive work place." These are concrete restrictions, not statements about mental function generally.

The ALJ thus erred in failing to incorporate specific work restrictions based on mental ability.

**B. Subjective Symptom Testimony**

Plaintiff next challenges the ALJ's findings regarding Plaintiff's subjective symptom testimony.

The Ninth Circuit has provided the following guidance regarding such testimony:

10

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir.2009). First, the ALJ must determine whether there is " 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir.2007)). If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give " 'specific, clear and convincing reasons' " in order to reject the claimant's testimony about the severity of the symptoms. *Id.* (quoting *Lingenfelter,* 504 F.3d at 1036). At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989). In evaluating the claimant's testimony, the ALJ may use " 'ordinary techniques of credibility evaluation.' " *Turner,* 613 F.3d at 1224 n. 3 (quoting *Smolen,* 80 F.3d at 1284). For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, *id.*; " 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,' " *Tommasetti,* 533 F.3d at 1039 (quoting *Smolen,* 80 F.3d at 1284); and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter,* 504 F.3d at 1040. While a claimant need not " 'vegetate in a dark room' " in order to be eligible for benefits, *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir.1987) (quoting *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, *see Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999); *Fair,* 885 F.2d at 603. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner,* 613 F.3d at 1225; *Valentine,* 574 F.3d at 693.

*Molina v. Astrue,* 674 F.3d 1104, 1112–1113 (9th Cir. 2012).

The ALJ made the following findings regarding Plaintiff's subjective symptom testimony:

As previously mentioned, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the objective medical evidence and other relevant documented evidence.  The documented objective medical evidence, including generally normal clinical findings (including generally full strength and no neurological deficit) and the claimant's relatively intact daily activities are inconsistent with functional limitations to the degree alleged.  As previously mentioned, the claimant reported medications and physical therapy helped, consistent with effective treatment (Exh. 1F: 4; 8F: 2; Claimant Testimony).  The undersigned notes that the claimant frequently denied psychiatric symptoms, such as depression, anxiety, hallucinations, and memory problems; refused to undergo laboratory studies or

intravenous or intramuscular treatments, despite presentation to the emergency department (ED) for subjective shortness of breath; made no attempt to attend an orthopedic referral, though he was told he needed to attend the referral to get approved for chronic pain medications; and missed multiple follow-up medical appointments, seemingly inconsistent with symptoms of disabling severity as alleged (e.g., Exs. 1F: 9; 3F: 4, 5F: 2; 7F: 8; 8F: 18; 13F:1). Further, as discussed above, the record generally notes no evidence of muscle atrophy, which would be expected if the claimant was as incapable of activities of daily living as alleged. The undersigned also notes that the claimant told a consultative examiner in March 2015 that he was seeking supplemental security income benefits due to injuries from a new motorcycle accident in 2012, significantly after the 2007 alleged onset date. (Ex. 10F: 1).

(A.R. 22).

Upon review, the Court finds that these reasons are sufficient. While the Court does not agree that the evidence supports each reason, for the reasons discussed above, the ALJ provides sufficient reasoning with substantial evidence for its finding that the Claimant's subjective symptom testimony is not fully supported.

**C. Conclusion**

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: **November 26, 2019**           /s/ Eric P. Grojean
                                       UNITED STATES MAGISTRATE JUDGE